UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELAINE BART<br>*Plaintiff*, | ) 3:20-CV-00404 (KAD)<br>)<br>) |
| v. | )<br>) |
| GOLUB CORPORATION<br>*Defendant*. | ) JANUARY 20, 2023<br>) |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 17)**

Kari A. Dooley, United States District Judge:

This action arises out of the Plaintiff Elaine Bart's ("Plaintiff") termination from her employment with the Defendant, the Golub Corporation ("Defendant"). Plaintiff alleges discrimination on the basis of sex in violation of Title VII, 42 U.S.C. § 2000e-2, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1). Pending before the Court is Defendant's motion for summary judgment. *See* ECF No. 17. Previously, on December 7, 2021, this Court granted Defendant's motion for summary judgment as unopposed. *See* ECF No. 18. On December 8, 2021, judgment entered in favor of Defendant against Plaintiff. *See* ECF No. 19. On January 5, 2022, however, Plaintiff filed an objection to the motion for summary judgment as well as a motion for reconsideration pursuant to Federal Rule of Civil Procedure Rule ("Fed. R. Civ. P.") 59(e) and a motion for relief from judgment pursuant to Fed. R. Civ. P. Rule 60(b)(1). *See* ECF Nos. 20 & 21.[1] On June 28, 2022, the Court granted in part Plaintiff's motion for reconsideration and relief from judgment and allowed Defendant to file a reply to Plaintiff's opposition. *See* ECF No. 25. Defendant did so on July 19, 2022. *See* ECF No.

---

[1] Plaintiff's counsel represented that the motion for summary judgment was never entered in his firm's calendaring system and so he never responded to it.

1

27. The Court has reviewed all the parties' submissions. For the following reasons, the motion for summary judgment is GRANTED.

**Relevant Facts**

The following facts are taken from Defendant's Local Rule 56(a)(1) Statement of Material Facts ("Def. LRS," ECF No. 17-2), the Plaintiff's response thereto ("Pl. LRS," ECF No. 20-2), and the parties' exhibits. The facts set forth by Defendant are admitted by Plaintiff unless otherwise indicated.[2]

Plaintiff was employed by Defendant as a food service team lead at the Price Chopper[3] grocery store in Oxford, Connecticut. Def. LRS at 1 ¶ 2. As a food service team lead, Plaintiff managed the food service and deli departments, which included tasks such as managing other staff, checking food stations, and putting products out for sale. *Id.* at 1–2 ¶¶ 3, 4. Plaintiff acknowledged that her job required her to maintain product quality and presentation standards, as well as to comply with all corporate and state sanitation procedures and regulations. *Id.* at 2 ¶ 4. Additionally, she was to maintain all hot food logs, consistent with Price Chopper policy. *Id.* Plaintiff testified during her deposition that hot food logs are used for the sale of cooked foods because "If you're putting food out that's undercooked and somebody gets sick, the company is at fault." *Id.* at 4 ¶ 17; Plaintiff's Deposition ("Pl. Dep"), ECF No. 17-2, at 31. Plaintiff further testified that failure to pass health department inspections causes business problems, and that she knew of at least one employee—a male—who had previously been terminated for falsification of food logs. *Id.* at 4 ¶¶ 20–21.

---

[2] Plaintiff admits all facts as stated by Defendant, except for Paragraph 40 of Defendant's Local Rule 56(a)(1), as discussed *infra*.
[3] Defendant operates grocery stores under the Price Chopper name. Def. LRS at 1 ¶ 1.

Plaintiff's immediate supervisor at the Oxford store was Damon Pappas, who had requested in the summer of 2017 that Plaintiff be transferred to Oxford from Southington. *Id.* at 2 ¶¶ 5, 6. Although the Oxford store was a higher volume store than the Southington store, and gave Plaintiff an opportunity for more responsibility, she did not want to work for Pappas. *Id.* at ¶¶ 7, 8. Plaintiff did not approve of how Pappas treated people in the department and thought he did not show respect to others. *Id.* at ¶ 8.

On August 28, 2016, while working at the Southington store, Plaintiff received two separate written warnings for violations of work performance standards pertaining to the maintenance of food logs. *Id.* at 5 ¶¶ 23, 24. She took responsibility for one of the violations. *Id.* at ¶ 23.[4] For the other warning, Plaintiff denied its substance, but later admitted during an ensuing internal review process (called "Addressing Concerns Together" or "ACT") that she had allowed expired product to be placed out for sale. *Id.* at ¶¶ 24, 25. On September 5, 2016, Pappas notified Human Resources ("HR") via email of these errors in food logs as well as the possible use of out-of-code product. *Id.* at ¶ 25.

Plaintiff's first discipline at the Oxford store occurred on April 17, 2018 for failure to keep proper logbooks.[5] *Id.* at 3 ¶ 10. Plaintiff received additional discipline on or around August 16, 2018 for several deficiencies in her department, for which Pappas formally admonished her. *Id.* ¶ 11. At that time, Pappas provided Plaintiff with a written job description, which stressed that maintaining food logs was part of her job duties. *Id.* at 5–6 ¶ 27. Following the admonishment, Plaintiff spoke to a member of Defendant's HR department, Karen Bowers, raising concerns about

---

[4] Although Plaintiff was not physically at the store at the time of this violation, she took responsibility because the violation occurred within her department. *Id.* at 5 ¶ 23.
[5] Plaintiff's department failed an audit for failure to keep cooling logs. *Id.* at 3 ¶ 10. Defendant used a third-party vendor to "spot check" temperature logs in order to maintain logging accuracy. *Id.* at 5 ¶ 22.

Pappas' treatment of her and others.[6] *Id.* at 3-4 ¶¶ 12, 13. She told Bowers that "everyone feels the same way about Damon" and that the people in her department had voiced to her that Pappas did not treat them properly. *Id.* at 3 ¶ 13 (quoting Pl. Dep. at 91). There were both male and female employees in the department at that time. *Id.* at 4 ¶ 14. Bowers encouraged Plaintiff to write a complaint so that an investigation could ensue. *Id.* at 4 ¶ 15.

Defendant ultimately terminated Plaintiff's employment on August 28, 2018. *Id.* at 6 ¶ 28. The termination of employment form, to which a copy of the August 26, 2018 food log was attached, indicated:

> "Elaine worked on Sunday, August 26, 2018, 5:30am to 2:45pm. Upon her leaving for the day it was discovered that the food service smoked food log times for the 6 hour checks were already completed by Elaine…despite the fact they were not due until between the hours of 3:30pm-4:54pm, hence falsifying this log. Additionally, there have been numerous missing entries on food service logs, out of code products in the walk in cooler, not discarded, product put out for sale not logged on food service logs, and product left out for sale after the allowable selling times. These are the same or similar serious violations that Elaine has been previously documented for in store #203 (August of 2016) and can no longer be tolerated for the food safety of our guests." ECF No. 17-14, at 1.

Plaintiff refused to sign off on her termination on August 30, 2018. *See* Def. LRS at 6 ¶ 28. During her deposition, however, Plaintiff agreed that intentionally[7] failing to maintain logbooks would constitute a violation of company policies (related to dishonesty, theft, fraud or falsification of records) as well as non-compliance with safety and sanitation procedures. *Id.* at ¶ 29. Plaintiff further agreed that she worked a shift from 5:30am to 2:45pm on August 26, 2018 and that her initials were recorded at the six-hour mark. *Id.* at ¶ 30. Plaintiff admitted that if the foods were first

---

[6] Specific allegations include that Pappas told Plaintiff that a ten-year-old could do a better job than her and that he should have fired her years ago, and that he called other team members an idiot and a "ding dong." Pl. Dep. at 84.
[7] Plaintiff differentiates acts taken on purpose and those that qualify as "if you make a mistake, you make a mistake." Pl. Dep. at 172.

temped at 10:00am, the six-hour monitoring would occur at 4:00pm.[8] *Id.* at ¶ 31. Thus, proper initialing for that log could only have been completed at 4:00pm, after Plaintiff's shift ended.[9] *Id.* Pappas documented more issues with food logs in various emails sent to HR on August 28, 2018. *Id.* at ¶¶ 34–39. Plaintiff testified that "some of those logs" were "never [] filled out," that someone in her department should have written in the logbook, and that "[s]tuff happens." Pl. Dep. at 184, 192, 196.

On September 7, 2018, Plaintiff sought ACT review of her termination. Def. LRS at 9 ¶ 41. On the initial issue review process form, Plaintiff indicated that she had been working in a "hostile environment," and that she had been "singled out, bullied, and harassed by…Damon Pappas." ECF No. 17-20, at 1. In the ACT meeting, the contents of which were summarized in a memorandum, Plaintiff indicated the logs were always a problem. *Id.*, ECF No. 17-21, at 1. Plaintiff further testified at her deposition that "because there were so many logs and so many things going on to keep track of, you would miss something sometimes because nobody is perfect..." Pl. Dep. at 216.

Defendant claims Plaintiff's "[o]verall" testimony at the deposition was that Pappas wanted to fire her because she had asked for a transfer and that she had confronted him about his belittling, derogatory comments made to associates. *Id.* at 8 ¶ 40. Plaintiff, however, refutes the characterization that her request for a transfer was the sole reason for her termination. Pl. LRS at 12 ¶ 40. Rather, she attests the transfer request "had some bearing on it." Pl. Dep. at 140–41. In her opposition memorandum to the motion for summary judgment, Plaintiff also relies upon her deposition testimony wherein she stated that Pappas repeatedly stated that men should be in charge

---

[8] The log from August 26, 2018 shows various foods first temped at times spanning 9:30am to 10:00am. *Id.* at ¶ 31.
[9] Plaintiff noted that no one could "prove…that that log is from that day" because she "did not put that date on there." Pl. Dep. at 175.

of the department and that women were too sensitive to be managers and/or the work was too stressful for a female manager. Plaintiff's Opposition, ECF No. 20, at 2, 3.

**Standard of Review**

The standard under which courts review motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).

**Discussion**

Plaintiff brings employment discrimination claims alleging that she was terminated from her employment due to her gender. In seeking summary judgment, the Defendant argues that Plaintiff has failed to demonstrate even a *prima facie* case of gender discrimination under Title VII or CFEPA, and that in any event, the Defendant has established a legitimate, non-discriminatory reason for her termination.

"Title VII makes it 'an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such

individual's…sex.'" *Christiansen v. Omnicom Grp., Inc*., 852 F.3d 195, 199 (2d Cir. 2017) (quoting 42 U.S.C. § 2000e-2(a)(1)). "In 1973, the Supreme Court adopted a three-stage, burden-shifting framework for analyzing employment discrimination cases under Title VII where a plaintiff alleges disparate treatment but does not have direct evidence of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82 (2d Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden to establish a prima facie case of discrimination. *See McDonnell Douglas,* 411 U.S. at 802. To establish a prima facie case of discrimination under Title VII and CFEPA, a plaintiff must show that (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Russell v. Aid to Developmentally Disabled, Inc.,* 753 Fed. App'x 9, 14 (2d Cir. 2018) (internal quotation marks omitted). The Plaintiff's burden at this stage is "*de minimis.*" *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995) (internal quotations omitted). If a plaintiff sets forth a *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Russell*, 753 Fed. App'x at 14. If the employer does so, the plaintiff then must demonstrate that the employer's stated reason for the adverse action was pretext for unlawful discrimination. *See McDonnell Douglas,* 411 U.S. at 804.

Here, there is no dispute that Plaintiff is within a protected class and that she suffered an adverse employment action—termination.[10] To demonstrate an inference of gender discrimination, Plaintiff relies upon comments Pappas made to her or others about female managers.[11] She argues

---

[10] Defendant does not advance any argument regarding Plaintiff's qualification for her position, although this question is clearly intertwined with the legitimacy of the reasons articulated for her termination.
[11] Pappas' commentary about female managers aside, Plaintiff's effort to rely upon his general surly demeanor and his belittling conduct directed at her entire department does not support her claims. Plaintiff alleged that Pappas treated

7

that his comments, coupled with his role as her supervisor, necessarily defeat summary judgment. Defendant asserts that Plaintiff has not demonstrated any circumstance that gives rise to an inference of discrimination in the decision to terminate her because the HR department made the decision to terminate her and, in any event, Pappas' statements were mere "stray remarks," which do not rise to the level of establishing discriminatory animus. Defendant therefore argues that Plaintiff cannot establish a *prima facie* case of gender discrimination. Further, Defendant asserts that even if Plaintiff could make a *prima facie* case, there is no genuine issue of material fact as to the reasons for her termination and the legitimacy of those reasons. Assuming for purposes of this decision that Plaintiff has identified a genuine issue of material fact as to whether she has made out a *prima facie* case of gender discrimination, the Court agrees that there is no genuine issue of material fact on the issue of pretext.

The record is unequivocal. Plaintiff was fired for poor job performance. She failed to keep accurate food logs, mishandled food product, and, specifically, falsified a food log on August 26, 2018 by signing off on a temperature check that would have occurred well after her shift ended. Indeed, Plaintiff has admitted that there were multiple occasions on which she failed to perform her job duties, primarily keeping accurate food logs. She too has admitted that an intentional failure to do so was a violation of the Defendant's policies because of the importance of keeping proper food logs. Furthermore, she has admitted that she knew at least one other male employee who had been terminated for the same types of violations.

---

*everyone*—men and women—in the department equally badly. *See supra*, Def. LRS at 3–4 ¶ 13, 14. A supervisor treating an employee poorly, although unfortunate if true, is not evidence of gender-based animus that allows for an inference of gender-based discrimination under Title VII or CFEPA. *See Ya-Chen Chen v. City University of New York*, 805 F.3d 59, 75 (2d Cir. 2015) ("Quite simply, even if severely held, a plaintiff's feelings and perceptions of being discriminated against do not provide a basis on which a reasonable jury can ground a verdict." (internal quotations and citation omitted)); *see also Redd v. New York Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) ("Title VII protects against status-based discrimination and is not otherwise a general civility code for the American workplace." (internal quotations and citation omitted)).

Defendant has offered more than enough evidence to establish that the termination was for a legitimate, nondiscriminatory reason. And although Plaintiff argues that Pappas' alleged discriminatory attitudes may be "sufficiently probative" as to the existence of gender-based discrimination, this argument does not address the Defendant's demonstration that Plaintiff was terminated for violating company policy regarding the handling and logging of food products. To the contrary, Plaintiff's acknowledgement that the reason provided for her termination was factually accurate and valid under Defendant's policies and procedures, is dispositive of the pretext issue. *See Bjorklund v. Golub Corp.*, 832 Fed. App'x 87, 98 (2d Cir. 2021) (Where plaintiff admitted that she failed to maintain food logs, in violation of the defendant's policy, and therefore did not do enough to show that the decision to fire her for failing to follow company policy was pretextual.). *See also, Shumway v. United Parcel Service, Inc.* 118 F.3d 60, 65 (2d Cir. 1997) (It is well-established that a "violation of a company policy is a legitimate, nondiscriminatory reason for an employee's termination."); *Coltin v. Corp. for Justice Mgmt. Inc.*, 542 F. Supp. 2d 197 (D. Conn 2008) (Employer articulated a legitimate, non-discriminatory reason for an employee's termination where employee violated the employer's policies.).

**Conclusion**

For the foregoing reasons, the motion for summary judgment (ECF NO. 17) is GRANTED. The Clerk of Court is directed to enter judgment for Defendant and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of January 2023.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE